# 6    Section 4(f) Determination

## 6.1    Introduction

Section 4(f) of the U.S. Department of Transportation Act of 1966 requires Department of Transportation (DOT) agencies to protect certain resources when making transportation improvements. These resources, collectively referred to as Section 4(f) resources, include publicly owned parks, recreation areas, wildlife or waterfowl refuges, and historical properties of national, state, or local significance. This chapter summarizes FRA's identification of protected properties and potential impacts to those properties, describes Section 4(f) resources that would be used by the alternatives under consideration for the Proposed Action (see explanation of "use" in Section 6.2), contains an analysis of potential feasible and prudent alternatives to the use of Section 4(f) resources, and identifies mitigation measures that would be employed to minimize harm to Section 4(f) resources resulting from use.

Since the publication of the DEIS, AAF no longer proposes any temporary construction activities within the Tosohatchee Wildlife Management Area. As a result, the potential temporary occupancy and de minimis impact to this property would not occur and has therefore been removed from this Section 4(f) Determination.

## 6.2    Section 4(f) Applicability

Section 4(f) of the U.S. DOT Act (49 USC § 303(c)) provides protection for publicly owned parks, recreation areas,  wildlife and waterfowl refuges, and historic properties or archaeological sites on or eligible for listing on the National Register of Historic Places (the National Register). Specifically, Section 4(f) provides that:

> "The Secretary of Transportation shall cooperate and consult with the Secretaries of the Interior, Housing and Urban Development, and Agriculture, and with the States, in developing transportation plans and programs that include measures to maintain or enhance the natural beauty of lands crossed by transportation activities or facilities…  The Secretary may approve a transportation program or project…requiring the use of publicly owned land of a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significant, or land of an historic site of national, State, or local significance (as determined by Federal, State, or local officials having jurisdiction over the park, area, refuge or site) only if:

- There is no prudent and feasible alternative to using that land; and

- The program or project includes all possible planning to minimize harm to the park, recreation area, wildlife and waterfowl refuge, or historic site resulting from the use."

AAF-AR0074106

A "use" of a protected property can occur in one of three ways:

- When land is permanently incorporated into a transportation facility;

- When there is a temporary occupancy of land that is adverse in terms of the statute's preservationist purposes; or

- When there is a constructive use of a Section 4(f) property.[1]

While not binding on FRA, FRA uses FHWA regulations (23 CFR part 774) to guide its interpretation and implementation of Section 4(f).

Where a DOT agency determines that a project would result in a use of a protected resource, it can only approve the project if there are no prudent and feasible alternatives avoiding the use and if the project incorporates all possible planning to minimize harm. If a prudent and feasible alternative exists that avoids Section 4(f) resources and meets the Project purpose and need, the DOT agencies may not select the alternative that uses a Section 4(f) resource. An alternative is not feasible if it cannot be built as a matter of sound engineering judgment. In determining whether an alternative is prudent, the FRA may consider if the alternative will result in any of the following: (1) compromise the project to a degree that is unreasonable for proceeding with the project in light of its stated purpose and need, (2) unacceptable safety or operational problems, (3) after reasonable mitigation the project results in severe social, economic, or environmental impacts; severe disruption to established communities; severe disproportionate impacts on minority or low-income populations; or severe impacts on environmental resources protected under other federal statutes, (4) additional construction, maintenance, or operational costs of an extraordinary magnitude, (5) other unique problems or unusual factors, (6) multiple factors that, while individually minor, cumulatively cause unique problems or impacts of extraordinary magnitude.

FRA has developed this Section 4(f) Determination because the All Aboard Florida Project would use (due to a Section 106 adverse effect) two properties that are individually eligible for listing on the National Register of Historic Places: the Eau Gallie River Bridge and the St. Sebastian River Bridge. The project will also have a *de minimis* impact on the Florida East Coast Railroad (FECR) Historic District because of the demolition of nine bridges that are contributing elements.

## 6.3    Project Purpose and Description

The purpose of the Project is to provide reliable and convenient intercity passenger rail transportation between Orlando and Miami, Florida (the Project Corridor), by extending (in Phase II) the previously reviewed Phase I AAF passenger rail service between Miami and West Palm Beach and by maximizing the use of existing transportation corridors. This transportation service would offer a safe and efficient alternative to automobile travel on Interstate 95 (I-95), the primary highway connecting Orlando and Miami; add transportation capacity to communities within the I-95 corridor; and encourage connectivity with other modes of transportation such as light rail, commuter rail, and air transportation.

---

1    A Constructive use occurs when the transportation project does not incorporate land from a Section 4(f) resource but the project's proximity impacts are so severe that the protected activities, features, or attributes that qualify a resource for protection under Section 4f) are substantially impaired. Substantial impairment occurs only when the protected activities, features, or attributes of the resource are substantially diminished.

AAF-AR0074107

The additional purpose of Phase I of the Project, as stated in the 2013 Finding of No Significant Impact (FONSI), is to "provide intercity passenger rail service that addresses South Florida's current and future needs to enhance the transportation system by providing a transportation alternative for Floridians and tourists, supporting economic development, creating jobs, and improving air quality" (Appendix 1.1-A2).

The Project includes four segments: the MCO Segment, which includes the proposed vehicle maintenance facility (VMF) and new railroad infrastructure between the VMF and the E-W Corridor; the E-W Corridor on new alignment between MCO and Cocoa, paralleling State Road (SR) 528; the N-S Corridor within the Florida East Coast Railroad (FECR) right-of-way between Cocoa and West Palm Beach (WPB), and the WPB-M Corridor within the FECR right-of-way. Since the publication of the 2012 EA and FONSI, AAF has determined that additional construction is necessary within the Phase I area, including reconstructing seven bridges over waterways, and modifying the turnout at the Miami Viaduct. Other changes to the Phase I segment include relocating the Fort Lauderdale Station and moving the Vehicle Maintenance Facility (from Fort Lauderdale to West Palm Beach). FRA analyzed the Fort Lauderdale Station in a Re-Evaluation, and FRA issued a separate Supplemental EA and FONSI for the West Palm Beach VMF (See Appendices 3.3.1-A1-A3). Neither of these changes would require the use of Section 4(f) properties. Generally, the Project includes additional rail infrastructure improvements from Orlando to West Palm Beach, including new track, new bridges, drainage systems, and the development of all communications, signaling, safety, and security systems. A new signal system would be implemented as part of the Project that will provide a Positive Train Control overlay system with a back office server in the operations control center to achieve compliance with 49 CFR part 229.

AAF submitted two separate loan applications to the Federal Railroad Administration (FRA) seeking financial assistance to support the phased implementation. This action triggered the need for review under the National Environmental Policy Act (NEPA).

## 6.4      Section 4(f) Protected Properties

Section 4(f) protects publically-owned land associated with public parks, recreation areas, or wildlife and waterfowl refuge of national, State, or local significance; and land of an historic site of national, State, or local significance. This section describes the Section 4(f) properties within the Project study area. Additional information is provided in Sections 4.4.5 and 4.4.6 of this FEIS.

### 6.4.1      Public Parks, Recreation Areas and Wildlife Refuges

Section 4.4.6 of this FEIS, *Recreation and Other Section 4(f) Resources,* identified 32 publically-owned parks, recreation areas, or wildlife refuges within 300 feet of the proposed Phase II project area (Orlando to West Palm Beach), and 45 Section 4(f) resources within 300 feet of the Phase I project area (West Palm Beach to Miami). These properties were identified using available public sources, as documented in Table 4.4.6-1. The lists of these properties are provided below in Tables 6.4.1-1 and 6.4.1-2.

AAF-AR0074108

**Table 6.4.1-1    Section 4(f) and Section 6(f) Parks, Wildlife Refuges, Conservation, and Recreation Areas within the Orlando-West Palm Beach Project Study Area**

| Recreational Resource | County | Description |
|---|---|---|
| **E-W Corridor** | | |
| Tosohatchee Wildlife Management Area (WMA) | Orange | The WMA is managed by the Florida Fish and Wildlife Conservation Commission (FWC). Recreational activities include: hiking, bicycling, camping, horseback riding, fishing, limited hunting and wildlife viewing (FWC 2013a). 30,700 ac. |
| Canaveral Marshes Conservation Area | Brevard | Conservation area managed by SJRWMD. Recreational activities include: fishing, hiking, bicycling, canoeing, boating, and wildlife viewing (SJRWMD 2013b). 12,644 ac. |
| **N-S Corridor** | | |
| Helen and Allan Cruickshank Sanctuary | Brevard | Wildlife sanctuary managed by Brevard County. Recreational activities include hiking and wildlife viewing (Brevard County, Florida 2013b). 140 ac. |
| Rotary Park at Suntree | Brevard | Community park managed by Brevard County. Recreational facilities include a playground and a pavilion (Brevard County, Florida 2013c). 10 ac, |
| Jordan Scrub Sanctuary | Brevard | Wildlife sanctuary managed by Brevard County. Recreational activities include: hiking, bicycling, horseback riding, and wildlife viewing (Brevard County, Florida 2013b). 354 ac. |
| South Mainland Community Center | Brevard | Community Center managed by Brevard County. Recreational facilities include a gymnasium and playground. A nature trail is in the planning process (Brevard County, Florida 2013b). |
| Malabar to Vero Beach Aquatic Preserve | Brevard and Indian River | Sovereign Submerged Lands managed by the State of Florida. Recreational activities include boating, swimming, fishing, and watching manatees, dolphin and birds. 28,000 ac. |
| North Sebastian Conservation Area | Indian River | Conservation area managed by Indian River County. Primary intended use is the protection of scrub habitat for the Florida scrub-jay. A plan for environmental education and passive recreation (hiking) was proposed (Indian River County, Parks Division 2013). 400 ac. |
| Pocahontas Park | Indian River | Community park managed by Indian River County. Facilities include playground, tennis courts, shuffle board, water fountains, and shaded park benches (Indian River County, Parks Division 2013). |
| Harmony Oaks Conservation Area | Indian River | Conservation area managed by Indian River County. Intended use of the park is to maintain a scenic shoreline for boaters. There are no existing trails, but the County has identified this area for future trails (locations unknown) (FWC 2013a). 90 ac. |
| Harbor Branch Natural Area | St. Lucie | Natural Area managed by St. Lucie County. Recreational activities include: hiking, picnicking, disc golf, horseshoes and volleyball (St. Lucie County, Environmental Resources Department n.d.). 250 ac. |
| D.J. Wilcox Preserve | St. Lucie | Preserve managed by St. Lucie County. Recreational activities include: hiking, birding and wildlife viewing (St. Lucie County, Florida 2013a). 100 ac. |
| Indrio Scrub Preserve | St. Lucie | Preserve managed by St. Lucie County. Recreational activities include hiking and wildlife viewing (St. Lucie County, Florida 2013a). 23 ac. |
| St. Lucie Village Heritage Park | St. Lucie | Park managed by St. Lucie County. Recreational activities include: Interpretive hiking trails, birding, picnic, volleyball, disc golf, and grilling (St. Lucie County, Florida 2013a). 120 ac. |
| Central Open Space – SLV | St. Lucie | Park managed by St. Lucie County. Park consists of a vacant lot with no facilities (St. Lucie County, Office of the Property Appraiser 2013). |
| Old Fort Historical Site | St. Lucie | Historical site managed by St. Lucie County. No recreational facilities were identified on the site and no information regarding the park was available on the County website (St. Lucie County, Florida 2013a). |
| Savannas Outdoor Recreation Area | St. Lucie | Recreational area managed by St. Lucie County. Recreational activities include: camping, boating, fishing, hiking, biking, wildlife viewing and picnicking (St. Lucie County, Florida 2013b). |

AAF-AR0074109

**Table 6.4.1-1     Section 4(f) and Section 6(f) Parks, Wildlife Refuges, Conservation, and Recreation Areas within the Orlando-West Palm Beach Project Study Area (Continued)**

| Recreational Resource | County | Description |
|---|---|---|
| **N-S Corridor** | | |
| Savannas Preserve State Park | St. Lucie | Park managed by the State of Florida. Recreational activities include: hiking, bicycling, horseback riding, canoeing, kayaking, fishing and wildlife viewing (Florida State Parks 2013). 550 ac. |
| Walton Scrub Preserve | St. Lucie | Preserve managed by St. Lucie County. Recreational activities include hiking, bicycling, fishing, and wildlife viewing (St. Lucie County, Florida 2013b).33 ac. |
| Rio Nature Park | Martin | Nature park managed by Martin County. Recreational activities include picnicking and wildlife viewing (Martin County, Department of Parks and Recreation 2011a). 2.5 ac. |
| Sailfish Ballpark | Martin | Ball Park managed by the City of Stuart. Recreational facilities include baseball fields, racquetball courts, tennis courts and picnicking facilities (City of Stuart, Community Services n.d.). |
| Station 30 Park | Martin | Community park managed by Martin County. Recreational facilities include picnicking facilities and playground (Martin County Property Appraiser 2012). |
| Broward St. Boat Ramp | Martin | Boat ramp managed by Martin County. Primary function is the loading and removing of boats from manatee pocket (Martin County, Department of Parks and Recreation 2011b). |
| Seabranch Preserve State Park | Martin | Park managed by the State of Florida. Recreational activities include: hiking, picnicking, and wildlife viewing (Florida State Parks 2013). 1,000 ac. |
| William G. "Doc" Meyers Park a.k.a. "South County Ball Park" | Martin | Ball Park managed by Martin County. Recreational facilities include softball/baseball fields, basketball courts, tennis courts, multi-purpose football and soccer fields, a batting cage, and concessions (Martin County, Department of Parks and Recreation 2011b). 35 ac. |
| Saturn Ave Addition | Martin | Park managed by Martin County. Park consists of a vacant lot with no facilities (Martin County, Department of Parks and Recreation 2011b). |
| Hobe Sound National Wildlife Refuge | Martin | Wildlife refuge managed by the United States Fish and Wildlife Service (USFWS) bisected by the proposed alignment. Recreational activities include: wildlife viewing, surf fishing, beach use, hiking and environmental education (USFWS 2013c). > 1,000 ac |
| Jonathan Dickinson State Park | Martin | Park managed by the State of Florida bisected by the proposed alignment. Recreational activities include: biking, hiking, boating, camping, swimming, picnicking, horseback riding, and wildlife viewing (Florida State Parks 2013). 10,500 ac. |
| Sawfish Bay Park[1] | Palm Beach | Park managed by the Town of Jupiter. Recreational activities include: picnicking, fishing, canoeing and kayaking (Town of Jupiter, Parks Department 2013). 2.5 ac. |
| Lake Park Scrub Natural Area | Palm Beach | Natural area managed by Palm Beach County. Recreational activities include hiking and wildlife viewing (Palm Beach County, Environmental Resources Management 2013). 55 ac. |
| Northwood Community Center | Palm Beach | Community park managed by the Boy and Girls Club of Palm Beach County. Recreational facilities include: outdoor basketball court, playground and recreational fields (Boys and Girls Clubs of Palm Beach County 2013). |
| Nathaniel Adams Park | Palm Beach | Community park managed by the City of West Palm Beach. Recreation facilities include a playground and basketball courts (City of West Palm Beach n.d.). |

Source: FNAI. 2012. *Florida managed Areas-June 2012*. Using: ArcGIS 10.1. Redlands, California: ESRI 2012. Tallahassee, Florida.; University of Florida GeoPlan Center. 2009. *Florida Parks and Recreational Facilities 2009*. Using: ArcGIS 10.1. Redlands, California: ESRI 2012. Gainesville, Florida.

AAF-AR0074110

**Table 6.4.1-2    Recreational Resources within the West Palm Beach – Miami Study Area**

| Resource Name | County/Municipality |
| --- | --- |
| Flamingo Park | West Palm Beach |
| Mary Brandon Park | West Palm Beach |
| City of West Palm Beach Municipal Golf Course | West Palm Beach |
| City of West Palm Beach Recreational Center | West Palm Beach |
| Hypoluxo Scrub Natural Area | Palm Beach County |
| Seacrest Scrub Natural Area | Palm Beach County |
| Lake Worth Shuffleboard Courts | Lake Worth |
| Lake Worth Recreation Center | Lake Worth |
| Veterans Park | Boynton Beach |
| Bicentennial Park | Boynton Beach |
| Pence Park | BoyntonBeach |
| Palm Beach County Recreation Center | BoyntonBeach |
| Worthing Park | Delray Beach |
| Currie Commons Park | Delray Beach |
| Miller Park | Delray Beach |
| Leon M. WeekesEnvironmental Preserve | Delray Beach |
| Boca Isles Park | Boca Raton |
| City of Boca RatonRecreation Center | Boca Raton |
| City of Boca Raton GopherTortoise Preserve | Boca Raton |
| Rosemary Ridge Preserve | Boca Raton |
| Poinciana Park/DogPark | Hollywood |
| Dowdy Baseball Park | Hollywood |
| Byrd Park | Dania |
| Jaco Pastorius Park and Community Center | Oakland Park |
| Tarpon River Park | Fort Lauderdale |
| Florence C. Hardy Park | Fort Lauderdale |
| Sistrunk Park | Fort Lauderdale |
| Oakland Park Boat Ramp | Fort Lauderdale |
| Midway Park | Fort Lauderdale |
| City of Fort Lauderdale SW 9th Street Recreation Center | Fort Lauderdale |
| Florence C. Hardy Park and Southside Cultural Center | Fort Lauderdale |
| Highlands Scrub Natural Area | Broward County |
| Broward County Planned Park | Broward County |
| Colohatchee Park | Winton Manors |
| Aqua Bowl Park | North Miami Beach |
| Arthur I. Snyder Tennis Complex | North Miami Beach |
| Oleta River State Park | Miami-Dade County |
| Arch Creek Park | Miami-Dade County |
| Arch Creek Park Addition | Miami-Dade County |
| Greynolds Park | Miami-Dade County |
| Dorsey Park | City of Miami |
| Woodson/Miami Design Park | City of Miami |
| Ed Abdella Field House and Athletics | City of Miami |
| El Portal Tot Lot | Village of El Portal |

Source: AAF. 2012. Environmental Assessment and Section 4(f) Evaluation for the All Aboard Florida Passenger Rail Project West
  Palm Beach to Miami, Florida. http://www.fra.dot.gov/eLib/details/L04278. Accessed September 12, 2013.

AAF-AR0074111

## 6.4.2    Historic Properties

Historic properties within the Area of Potential Effect that are listed in, or eligible for, the National Register of Historic Places, are identified and documented in Section 4.4.5, *Historic Properties,* of this FEIS. The SHPO has concurred with FRA's findings of eligibility.

The NRHP-eligible Florida East Coast Railway (FECR) Historic District is the only identified historic property within the APE for direct effects. The FECR Historic District is eligible for listing under Criterion A, in the categories of Transportation and Community Planning and Development. It was built primarily in the last quarter of the 19th century and the first decade of the 20th century. The FECR was a project of Henry Morrison Flagler, who originally worked with John D. Rockefeller in building the Standard Oil Trust, and became known for developing resorts, industries, and communities along Florida's eastern coast.

Within the FECR Historic District in the Phase II N-S Corridor there are 12 bridges that are either individually eligible for the National Register, or are contributing elements to the District (Table 6.4.2-1).

**Table 6.4.2-1    FECR Historic Bridges within the N-S Corridor APE for Direct Effects**

| Mile Post | County | FMSF # | Site Name / Address | Date Estimate | National Register Status |
|---|---|---|---|---|---|
| 190.47 | Brevard | 8BR3058 | Fixed Railway Bridge over the Eau Gallie River – Steel | 1925 | Eligible as FECR Contributing Resource/ Individually Eligible |
| 194.34 | Brevard | 8BR3059 | Fixed Railway Bridge over the Crane Creek and Melbourne Street – Steel | 1925 | Eligible as FECR Contributing Resource |
| 197.7 | Brevard | 8BR3060 | Fixed Railway Bridge over the Turkey Creek – Steel | 1925 | Eligible as FECR Contributing Resource |
| 202.59 | Brevard | 8BR3061 | Fixed Railway Bridge over the Goat Creek – Steel | 1959 | Eligible as FECR Contributing Resource |
| 212.07 | Brevard and Indian River | 8BR3062/ 8IR1569 | Fixed Railway Bridge over the Sebastian River – Steel | 1926 | Eligible as FECR Contributing Resource/ Individually Eligible |
| 240.1 | St. Lucie | 8SL3191 | Fixed Bridge over the Taylor Creek - Concrete with Steel Beam Span | 1961 | Eligible as FECR Contributing Resource |
| 259.95 | Martin | 8MT1623 | Fixed Bridge over the Rio Waterway - Steel and Timber Piles | 1958 | Eligible as FECR Contributing Resource |
| 260.93 | Martin | 8MT1382 | Movable Bridge over the St. Lucie River – Steel | 1938 | Eligible as FECR Contributing Resource/ Individually Eligible |
| 266.86 | Martin | 8MT1624 | Fixed Bridge over the Salerno Waterway - Steel and Timber Piles | 1958 | Eligible as FECR Contributing Resource |
| 267.34 | Martin | 8MT1625 | Fixed Bridge over the Tributary to Manatee Creek 1 - Steel and Timber Piles | 1962 | Eligible as FECR Contributing Resource |
| 267.70 | Martin | 8MT1626 | Fixed Bridge over the Tributary to Manatee Creek 2 - Steel and Timber Piles | 1962 | Eligible as FECR Contributing Resource |
| 282.58 | Palm Beach | 8PB16041 | Movable Bridge over the Loxahatchee River – Steel | 1935 | Eligible as FECR Contributing Resource/ Individually Eligible |

AAF-AR0074112

Six archaeological sites are located within the direct effects APE, or have uncertain boundaries that may potentially extend into the APE (Table 6.4.2-2).

**Table 6.4.2-2    Archaeological Sites Located Potentially within the N-S Corridor APE**

| FMSF # | Site Name / Address | Site Type | National Register Status |
|---|---|---|---|
| 8IR846 | Railroad | Malabar-Period Shell Midden and Artifact Scatter | Not Evaluated by SHPO |
| 8MT1287 | Hobe Sound National Wildlife Refuge #3 | Prehistoric Campsite and Prehistoric Shell Midden | Previously recommended as Potentially Eligible: Not Evaluated by SHPO |
| 8SL41 | Fort Capron | Historic Fort | Previously recommended as Potentially Eligible: Not Evaluated by SHPO |
| 8SL1772 | Avenue A-Downtown Fort Pierce | Precolumbian Habitation, Midden, Campsite, and extractive Site; Historic American Building Remains, Refuse, and Artifact Scatter | Not Evaluated by SHPO |
| 8IR1/8IR9 | Vero Man/Vero Locality | Pleistocene Faunal deposits; Redeposited Precolumbian Burial | NRHP-Eligible |
| 8SL31 | Fort Pierce | Historic Fort | NRHP-Listed |

Within the N-S Corridor APE for indirect effects, 63 historic individual properties and historic districts were identified in the 2013 CRAR (Appendix 4.4.5-A3) and Addendum to the CRAF (Appendix 4.4.5-A4). These historic properties include 12 resources in Brevard County; 12 resources in Indian River County; 26 resources in St. Lucie County; 10 resources in Martin County; and 3 resources in Palm Beach County.

**Table 6.4.2-3    Historic Properties within the N-S Corridor APE for Indirect Effects[1]**

| FMSF # | Site Name / Address | Resource Type | Construction Date | Style | National Register Status |
|---|---|---|---|---|---|
| 8IR859 | Union Cypress Saw Mill Historic District | Mixed District | | | NRHP-Eligible |
| 8BR215 | Florida Power & Light Co. Ice Plant / 1604 S, Harbor City Boulevard | Building | 1926 | Industrial Vernacular | NRHP–Listed |
| 8BR759 | Marion S. Whaley Citrus Packing House/ 2275 Rockledge Blvd W. | Building | 1930 | Frame Vernacular | NRHP-Listed |
| 8BR1163 | Mattie Lamar House/ 361 Stone Street | Building | c. 1917 | Frame Vernacular | NRHP-Eligible |
| 8BR1710 | Jorgensen's General Store/5390 US Hwy 1 | Building | 1894 | Frame Vernacular | NRHP-Listed |
| 8BR1723 | Cocoa Cemetery Storage Building/ 101 N. Cocoa Blvd. | Building | c. 1931 | Masonry Vernacular | NRHP-Eligible |
| 8BR1739 | Ashley's Cafe & Lounge/ 1609 Rockledge Blvd. W. | Building | c. 1932 | Tudor Revival | NRHP-Eligible |

1    Includes properties listed in, or eligible for listing in, the National Register of Historic Places. For a full list of surveyed properties, please see the 2013 CRAR and 2015 CRAR Addendum Appendices (online).

AAF-AR0074113

**Table 6.4.2-3    Historic Properties within the N-S Corridor APE for Indirect Effects[1] (Continued)**

| FMSF # | Site Name / Address | Resource Type | Construction Date | Style | National Register Status |
|---|---|---|---|---|---|
| 8BR1741 | Rockledge Gardens Nursery & Landscaping/2153 Rockledge Blvd. W. | Building | c. 1930 | Industrial Vernacular | NRHP-Eligible |
| 8BR1765 | Bohn Equipment Company/ 255 Olive St | Building | c. 1927 | Industrial Vernacular | NRHP-Eligible |
| 8BR2779 | 317 Rosa Jones Drive | FECR Station | c. 1962 | International | NRHP-Eligible |
| 8BR1724 | Hilltop Cemetery | Cemetery | c. 1887 | | NRHP-Eligible |
| 8BR1777 | Cocoa Cemetery | Cemetery | c. 1890 | | NRHP-Eligible |
| 8IR859 | McKee Jungle Gardens | Resource Group | | | NRHP-Listed |
| 8IR1519 | Dixie Highway | Linear Resource | | | NRHP-Eligible |
| 8IR1516 | FDOT Bridge No. 880001 | Bridge | | | NRHP-Eligible |
| 8IR68 | Vero Railroad Station/ 2336 14th Avenue | FECR Station | 1903 | Frame Vernacular | NRHP-Listed |
| 8IR99 | George Armstrong Braddock House/ 1309 Louisiana Avenue | Building | 1908 | Georgian Revival | NRHP-Eligible |
| 8IR100 | Baughman House/ 1525 North Louisiana Avenue | Building | 1900 | Neo-Classical Revival | NRHP-Eligible |
| 8IR388 | 5056 North Old Dixie Highway | Building | c. 1920 | Bungalow | NRHP-Eligible |
| 8IR624 | Old Vero Beach Community Building/ 2146 14th Avenue | Building | 1935 | Frame Vernacular | NRHP-Listed |
| 8IR858 | Hall of Giants, McKee Jungle Gardens/ US 1 and 4th Street | Building | 1940 | Other | NRHP-Eligible (individually and contributing to district) |
| 8IR975 | Vero Beach Diesel Power Plant/ 1133 19th Place | Building | 1926 | Masonry Vernacular | NRHP-Listed |
| 8IR1464 | Vero Beach Community Center/ 2266 14th Avenue | Cemetery | 1966 | Moderne | NRHP-Eligible |
| 8IR1475 | 1146 21st Street | Cemetery | 1966 | Moderne | NRHP-Eligible |
| 8SL2801 | Edgar Town Historic District | Historic District | | | NRHP-Eligible (also local designation) |
| 8SL76 | St. Lucie Historic District | Historic District | | | NRHP-Listed |
| 8SL78 | Fairmont Manor/ 5707 South Indian River Drive | Building | 1896 | Neo-Classical Revival | NRHP-Eligible |
| 8SL220 | 9015 South Indian River Drive | Building | c. 1890 | Frame Vernacular | NRHP-Eligible |
| 8SL227 | 7901 South Indian River Drive | Building | c. 1910 | Craftsman | NRHP-Eligible |
| 8SL229 | 6109 South Indian River Drive | Building | c. 1915 | Colonial Revival | NRHP-Eligible |
| 8SL231 | 5703 South Indian River Drive | Building | c. 1915 | Prairie Style | NRHP-Eligible |
| 8SL234 | 5309 South Indian River Drive | Building | c. 1935 | Colonial Revival | NRHP-Eligible |

1    Includes properties listed in, or eligible for listing in, the National Register of Historic Places. For a full list of surveyed properties, please see the 2013 CRAR and 2015 CRAR Addendum Appendices (online).

AAF-AR0074114

**Table 6.4.2-3    Historic Properties within the N-S Corridor APE for Indirect Effects[1] (Continued)**

| FMSF # | Site Name / Address | Resource Type | Construction Date | Style | National Register Status |
|--------|---------------------|---------------|-------------------|-------|--------------------------|
| 8SL236 | Riverhill/ 4625 South Indian River Drive | Building | 1903 | Frame Vernacular | NRHP-Eligible |
| 8SL237 | Britt House/ 4511 South Indian River Drive | Building | 1908 | Frame Vernacular | NRHP-Eligible |
| 8SL238 | N.E. Card House/ 3915-3917 Indian River Drive | Building | 1914 | Masonry Vernacular | NRHP-Eligible |
| 8SL247 | Hoskins House/ 2929 North Indian River Drive | Building | 1910 | Frame Vernacular | NRHP-Eligible |
| 8SL289 | Old Fort Pierce City Hall/ 315 A Avenue | Building | c. 1925 | Italianate | NRHP-Listed |
| 8SL799 | Sunrise Theater/ 117 2nd Street South | Building | c. 1923 | Mediterranean Revival | NRHP-Listed |
| 8SL825 | 601 South 2nd Street | Building | c. 1935 | Masonry vernacular | NRHP-Eligible |
| 8SL826 | Frank Tyler House/ 519 2nd Street South | Building | c. 1924 | Mediterranean Revival | NRHP-Eligible |
| 8SL917 | Banyon Belle Manor/ 1001 South Indian River Drive | Building | 1905 | Georgian Revival | NRHP-Eligible |
| 8SL918 | 1009 South Indian River Drive | Building | 1925 | Mission | NRHP-Eligible |
| 8SL920 | 1029 South Indian River Drive | Building | 1920 | Georgian Revival | NRHP-Eligible |
| 8SL926 | O.L. Peacock House/ 2211 South Indian River Drive | Building | 1920 | Mediterranean Revival | NRHP-Eligible |
| 8SL930 | Stephen Lesher House/ 2501 South Indian River Drive | Building | 1920 | Italian Renaissance Revival | NRHP-Eligible |
| 8SL931 | Carlton-Vest House/ 2507 South Indian River Drive | Building | 1920 | Masonry Vernacular | NRHP-Eligible |
| 8SL932 | Casa Del Rio/ 2513 South Indian River Drive | Building | 1920 | Italian Renaissance Revival | NRHP-Eligible |
| 8SL933 | Babe Phelps House/ 2521 South Indian River Drive | Building | 1935 | Monterey | NRHP-Eligible |
| 8SL1599 | Shadetree Studio/ 2900 Old Dixie Highway | Building | 1950 | Frame Vernacular | NRHP-Eligible |
| 8SL1922 | East Coast Packers/ 2130 Old Dixie Highway | Building | 1950 | Industrial Vernacular | NRHP-Eligible |
| 8MT1573 | Witham Field Airport | Mixed District | | | NRHP-Eligible |
| 8MT1621 | Dixie Highway | Linear Resource | | | NRHP-Eligible |
| 8MT46 | George W. Parks Store/ Stuart Feed/ 101 South Flagler Avenue | Building | 1901 | Frame Vernacular | NRHP-Eligible |
| 8MT84 | Fern Building/ 73 West Flagler Avenue | Building | c. 1950 | Masonry Vernacular | NRHP-Eligible |
| 8MT86 | Lyric Theatre/ 59 Southwest Flagler Avenue | Building | c. 1926 | Mediterranean Revival | NRHP-Listed |
| 8MT130 | East Coast Lumber and Supply/ 49 Southwest Flagler Avenue | Building | 1917 | Frame Vernacular | NRHP-Eligible |

1    Includes properties listed in, or eligible for listing, in the National Register of Historic Places. For a full list of surveyed properties, please see the 2013 CRAR and 2015 CRAR Addendum Appendices (online).

AAF-AR0074115

**Table 6.4.2-3    Historic Properties within the N-S Corridor APE for Indirect Effects[1] (Continued)**

| FMSF # | Site Name / Address | Resource Type | Construction Date | Style | National Register Status |
|---|---|---|---|---|---|
| 8MT131 | Hobe South Cabinetry/ 500 South Dixie Highway | Building | 1917-c. 1926 | Masonry Vernacular | NRHP-Eligible |
| 8MT307 | Crary House/ 161 Southwest Flagler Avenue | Building | 1925 | Tudor Revival | NRHP-Eligible |
| 8MT838 | 12200 Southwest Nassau Street | Building | c. 1941 | Frame Vernacular | NRHP-Eligible |
| 8MT1066 | 250 North Flagler Road | Building | c. 1940 | Masonry Vernacular | NRHP-Eligible |
| 8PB13340 | Kelsey City Layout | Historic District | | | NRHP-Eligible |
| 8PB218 | Evergreen Cemetery | Cemetery | 1916 | | NRHP-Eligible (also local designation) |
| 8PB6064 | St. John's Baptist Church/ 2010 A. E. Isaacs Avenue | Building | 1929 | Mission | NRHP-Eligible |

1    Includes properties listed in, or eligible for listing in, the National Register of Historic Places. For a full list of surveyed properties, please see the 2013 CRAR and 2015 CRAR Addendum Appendices (online).

The Phase I Project APE (West Palm Beach to Miami) also includes the FECR Historic District, with eight historic bridges identified as contributing resources (Table 6.4.2-4). Section 4(f) uses of these bridges were not evaluated in the 2013 EA or Section 4(f) Determination because modifications to the bridges were not necessary for Phase I rail operations, therefore, there would be no use of these resources due to Phase I. Section 4.4.5, *Historic Properties*, provides a list of all historic properties within the APE for the Phase I (WPB-M) Corridor.

**Table 6.4.2-4    Historic Railway Bridges Identified within the WPB-M Corridor APE for Direct Effects**

| County | FMSF # | Site Name / Address | Date Estimate | National Register Status |
|---|---|---|---|---|
| Palm Beach | 8PB15951 | Fixed Railway Bridge over the C-15 Canal | 1962 | Eligible as FECR Contributing Resource |
| Broward | 8BD4860 | Fixed Railway Bridge over the Cypress Creek/ C-14 Canal | 1960 | Eligible as FECR Contributing Resource |
| Broward | 8BD4861 | Fixed Railway Bridge over the North Fork of Middle River | 1957 | Eligible as FECR Contributing Resource |
| Broward | 8BD4862 | Fixed Railway Bridge over the South Fork of Middle River | 1959 | Eligible as FECR Contributing Resource |
| Broward | 8BD4863 | Fixed Railway Bridge over the Dania Cut-Off Canal | 1927 | Eligible as FECR Contributing Resource |
| Miami-Dade | 8DA12596 | Fixed Railway Bridge over the Oleta River | 1963 | Eligible as FECR Contributing Resource |
| Miami-Dade | 8DA12597 | Fixed Railway Bridge over the Royal Glades/C-9 Canal | 1956 | Eligible as FECR Contributing Resource |
| Miami-Dade | 8DA12598 | Fixed Railway Bridge over the Arch Creek | 1930 | Eligible as FECR Contributing Resource |

AAF-AR0074116

## 6.5    Use of Section 4(f) Properties

This section identifies the uses of Section 4(f) properties that would result from the proposed Project, either as direct uses (incorporation of property or adverse effects to a Section 106 historic property) or indirect (constructive) uses.

### 6.5.1    Uses (Direct Impacts)

Thirty-three recreational properties were identified within the Orlando-WPM Study Area, including two in the E-W Corridor and thirty-one in the N-S Corridor. These resources comprise several different property types, including conservation areas, community parks, wildlife sanctuaries, historic sites, and sports and boating facilities. A majority of these properties are county-owned and/or managed, with additional properties operated by the State of Florida, the United State Fish and Wildlife Service, and individual municipalities. As described in Section 4.4, the Project will not result in any direct impacts to any publically-owned park, recreation area, wildlife or wildlife and waterfowl refuge of national, State, or local significance.

The Project will construct railroad infrastructure within the FECR right-of-way, which is designated as the FECR Historic District. This includes the demolition of nine bridges that are contributing elements of the Historic District. However, after consultation with SHPO, and with its concurrence, FRA has determined that the Project will not result in an adverse effect to the FECR Historic District and therefore will result in a *de minimis* impacts to the District for purpose of Section 4(f). However, as described below, the Project will require the demolition and reconstruction of two bridges, individually eligible for listing on the National Register of Historic Places and therefore protected under Section 4(f).

#### 6.5.1.1    Orlando to West Palm Beach (Phase II)

The FECR Corridor was originally built as a double-track railroad, but today it is mostly a single-track railroad with several long sidings. The railbed for the second track still exists and would be used for the additional track improvements. Infrastructure improvements, such as bridge replacements and curve improvements, are planned to be completed within the existing right-of-way and no additional right-of-way acquisition is anticipated. The addition of the second track would return the N-S corridor to its historic, dual-track configuration and historic use as a passenger rail line.

The NRHP-eligible FECR Historic District, which is the central resource of the N-S Corridor, would not be adversely affected by the Project. Previous studies and coordination with SHPO have identified the rail infrastructure within the FECR Corridor as eligible for listing on the NRHP as a linear district. The FECR Corridor retains historical importance due to its associations with development and transportation of the east coast of Florida. Built primarily in the last quarter of the 19th century and the first decade of the 20th century, the FECR Corridor was a project of Henry Morrison Flagler. Flagler, who originally worked with John D. Rockefeller in building the Standard Oil Trust, became known for developing resorts, industries, and communities along Florida's eastern coast. The FECR Corridor is considered eligible for listing in the NRHP as a linear historic district under Criterion A in the categories of Transportation, and Community Planning and Development.

AAF-AR0074117

FRA determined that the use of this historic rail line and restoration of passenger rail on the line as part of Phase I (The AAF Passenger Rail Project – West Palm Beach to Miami ) would not have an adverse effect on the NRHP-eligible FECR Railway Historic District in that segment of the corridor. In a letter dated November 6, 2012, and appended to the 2013 FONSI (see Appendix 1.1-A2), the SHPO concurred with this determination. The Project would include similar improvements for the N-S Corridor in Phase II and would have the same potential to affect the FECR Historic District.

FRA has made a recommendation of "no adverse effect" for direct impacts to the FECR Historic District in the N-S Corridor because the use of the historic rail line and restoration of passenger rail service would not adversely affect the setting or alter the character-defining features, and therefore there would be no Section 4(f) use. On July 24, 2015, SHPO concurred with this finding.

As part of this reconstruction, in Phase II the Project will alter twelve bridges within the N-S Corridor that are either individually eligible for the National Register or are contributing elements to the FECR Historic District (Tables 6.5-1, 6.5-2). Two of these bridges that are individually eligible for the National Register will be demolished and replaced with modern structures; seven bridges that are contributing elements will be demolished and replaced with modern structures; two bridges that are individually eligible for the NRHP and one bridge that is contributing elements will be rehabilitated. Demolishing and replacing the contributing bridges has been determined as "no adverse effect" under Section 106 and therefore this replacement is a *de minimis* impact under Section 4(f).

Within the N-S Corridor, four bridges (Eau Gallie River, St. Sebastian River, St. Lucie River, and Loxahatchee River) have been identified as individually eligible for listing on the NRHP under Criterion A[2] and Criterion C.[3] These four bridges are also contributing elements to the FECR Historic District. Eight additional bridges (see Table 6.4.2-1) are not considered individually eligible for listing on the NRHP, but are contributing elements to the FECR Historic District.

As described in Section 3.3, *Alternatives Studied in Detail in the EIS*, AAF proposes to demolish the Eau Gallie River and St. Sebastian River bridges and construct two new single-track bridges within the same footprint at each location. Demolishing these two bridges is an adverse effect that cannot be avoided and therefore a use of a Section 4(f) property. The St. Lucie River and Loxahatchee River bridges would be rehabilitated, as described in Section 3.3.3 of the FEIS, but FRA has determined, with SHPO concurrence, that the rehabilitation would not result in an adverse effect to the bridges.

---

[2]  See 36 CFR 60.4(a) (Associated with events that have made a significant contribution to the broad patterns of our history.)
[3]  See 36 CFR 60.4(c) (Embody the distinctive characteristics of a type, period, or method of construction, or that represent the work of a master, or that possess high artistic values, or that represent a significant and distinguishable entity whose components may lack individual distinction.)

AAF-AR0074118

| Table 6.5-1 | Proposed Bridge Construction, N-S Corridor | | | | | |
|---|---|---|---|---|---|---|
| Bridge | NR Status | Proposed Project | Number of New Single-Track Bridges | Length (ft) | Width (ft) | Number of Spans |
| Eau Gallie River | Individual | Demolish | 2 | 580 | 16 | (15)[1] |
| Crane Creek | Contributing | Demolish | 2 | 660 | 16 | (17) |
| Turkey Creek | Contributing | Demolish | 2 | 180 | 16 | 3 |
| Goat Creek | Contributing | Demolish | 2 | 120 | 16 | 5 |
| St. Sebastian River | Individual | Demolish | 2 | 1625 | 16 | (43) |
| Taylor Creek | Contributing | Rehabilitate | 0 | 210 | 16 | 8 |
| Rio Waterway | Contributing | Demolish | 2 | 95 | 16 | 4 |
| St. Lucie River | Individual | Rehabilitate | 0 | 1270 | 24 | 49 |
| Salerno Waterway | Contributing | Demolish | 1 | 40 | 16 | 2 |
| Manatee Tributary 1 | Contributing | Demolish | 2 | 34 | 16 | 1 |
| Manatee Tributary 2 | Contributing | Demolish | 2 | 34 | 16 | 1 |
| Loxahatchee River | Individual | Rehabilitate | 0 | 585 | 28 | 9 |

1    Number of spans has not been determined for the new structure. (X) is number of existing spans.

AAF will continue to consult with SHPO through the design process to ensure that all of the new or rehabilitated bridge structure designs for the contributing element bridges within the FECR Historic District, including those for the St. Lucie River, Loxahatchee River, and Taylor Creek bridges, are compatible with the historic character of the FECR Historic District. Based upon AAF's commitment to continued consultation, FRA has determined, and received SHPO concurrence, that rehabilitating the St. Lucie River, the Loxahatchee River and the Taylor Creek Bridges and replacing the seven bridges that are not individually eligible for listing on the NPHP but are eligible as contributing elements to the FECR Historic District would not have an adverse effect on the historic district and therefore result in a *de minimis* impact to the resource under Section 4(f). AAF in consultation with the SHPO will work to develop bridge designs that are in keeping with the Secretary of the Interior's Standards for Rehabilitation. This process is incorporated in the Memorandum of Agreement (MOA) prepared in accordance with Section 106 of the National Historic Preservation Act and addressing mitigation for the adverse effects to the two bridges.[4]

Based on the information available, FRA has determined that the Project would have no adverse effect on archaeological sites within the APE for direct impacts for the N-S Corridor. The no adverse effect finding is based on the condition that AAF will continue to consult with SHPO through the design process, as needed, and will adhere to the stipulations of the MOA to ensure appropriate sensitivity to the previously recorded archaeological sites located within the APE (the draft MOA is appended to this FEIS as Appendix 5.4.5). There would be no adverse effect and no Section 4(f) use of an archaeological resource.

AAF has prepared and will follow an Archaeological Monitoring Plan for archaeological sites in close proximity to the N-S Corridor, which will be stipulated in the MOA. The implementation of the

4    See chapter 5, section 5.4.5.1 for a further explanation of the MOA.

AAF-AR0074119

Archaeological Monitoring Plan, which includes construction crew training and procedures in the unlikely event that archaeological features or artifacts are discovered during excavation, will avoid or minimize the potential adverse effect of excavation by identifying and protecting any unmarked human remains or significant archaeological resources that may be encountered during construction.

### 6.5.1.2    West Palm Beach to Miami Corridor (Phase I)

As stated in the 2013 FONSI, FRA consulted with the SHPO pursuant to NHPA Section 106, and received concurrence on November 6, 2012 with FRA's finding that the Project would have no adverse effect on any of historic resources within the WPB-M APE. The concurrence is conditional, and requires AAF to continue consultation with the SHPO and locally affected parties, including the Cities of West Palm Beach, Fort Lauderdale, and Miami, through the station design process. In a subsequent re-evaluation, in a letter dated March 24, 2014, the SHPO also concurred with FRA's finding that the relocated Ft. Lauderdale Station would have no adverse effect on historic properties (Appendix 3.3.1-A1-A3). In a letter dated October 30, 2014 the SHPO also concurred with FRA's finding that the relocated West Palm Beach Vehicle Maintenance Facility would have no adverse effect on historic properties. The 2013 FONSI also made the determination that Phase 1 would not use any property subject to Section 4(f).

For Phase I, SHPO concurred with FRA's determination of "no adverse effect" conditioned on the reconstruction or rehabilitation work to the bridges in the West Palm Beach – Miami Corridor being developed in consultation with SHPO to avoid and/or minimize effects. For Phase II, AAF will continue to consult with SHPO through the design process to ensure compatibility and appropriate sensitivity to the bridge resources in the N-S Corridor and the FECR Historic District. As shown in Table 6.5-2, three bridges that were determined eligible in Phase I as contributing elements would be demolished and replaced with new 2-track structures. Two of the bridges that are eligible as a contributing element, but not eligible for listing individually (the fixed bridges over Dania Creek and Snake Creek), would be rehabilitated.

**Table 6.5-2     Proposed Bridge Construction, West Palm Beach-Miami Corridor**

| Bridge | NR Status | Proposed Project | Number of New Single-Track Bridges | Length (ft) | Width (ft) | Number of Spans |
|---|---|---|---|---|---|---|
| West Palm Beach Canal | Contributing | Retain | 1 | 200 | 16 | 9 |
| Cypress Creek Canal | Contributing | Retain | - | | | |
| North Fork Middle River | Contributing | Demolish | 2 | 192 | 16 | 8 |
| South Fork Middle River | Contributing | Demolish | 2 | 192 | 16 | 8 |
| Dania Canal | Contributing | Rehabilitate | - | 79 | 30 | 1 |
| Oleta River | Contributing | Demolish | 2 | 82 | 16 | 3 |
| Snake Creek Canal | Contributing | Rehabilitate | - | 160 | 27 | 7 |
| Arch Creek | Contributing | Retain | 1 | 75 | 16 | 1 |

AAF-AR0074120

As part of Phase II of the Project, AAF proposes to rehabilitate one bridge and demolish and replace three other bridges within the WPB–M Corridor that have been determined to be eligible as contributing elements to the FECR Historic District (Table 6.5-2). As described above in section 3.2.3.2, AAF has evaluated alternatives to demolishing these bridges and found that it is not feasible to preserve these bridges.

For Phase I, the SHPO concurred in FRA's "no adverse effect" determination conditioned on the reconstruction or rehabilitation work to the bridges being developed in consultation with SHPO to avoid and/or minimize effects. Having secured SHPO's concurrence in its "no adverse effect" determination, FRA finds that the demolition of the contributing elements will result in a *de minimis* impacts to the resource under Section 4(f). Additionally, pursuant to the MOA Stipulations for Phase II, AAF will continue to consult with SHPO through the design process to ensure compatibility and appropriate sensitivity to the bridge resources and the FECR Historic District.

## 6.5.2    Indirect Effects

FRA's analysis found that the Project will not result in any constructive uses (indirect impacts) to Section 4(f) properties resulting from adverse proximity impacts from the Project. A constructive use can occur when a transportation project does not incorporate land from a Section 4(f) resource, but the project's effects on the surrounding area are so severe that the protected activities, features, or attributes that qualify the resources for protection under Section 4(f) are substantially impaired. Substantial impairment is determined to occur when there is a substantial diminishment of the activities, features, and attributes of the Section 4(f) recreation resources. This evaluation focuses on the potential proximity impacts to Section 4(f) resources from the Project's potential noise, vibration, aesthetics and access effects.

### 6.5.2.1    Noise

The noise analysis conducted for the Project and documented in the FEIS shows that, with the use of pole-mounted wayside horns and improved rail infrastructure, the Project will reduce noise levels along the N-S Corridor in comparison to existing conditions, and that noise levels 50 feet from the right-of-way would not result in noise impacts. While the proposed passenger trains are lighter and faster than the existing freight train traffic, overall there will be more train traffic/operations occurring each day. Secondary and cumulative noise effects are anticipated to be minimal to moderate. Tables 5.4.5-3 and 5.4.5-4 show the noise effects on historic properties and identifies the land use category associated with each property. As discussed in Section 5.2.2 of the FEIS, the analysis used FTA impact criteria because of the mix of freight and passenger trains, and the average train speeds of 90 mph or less. As shown, noise mitigation (wayside horns in lieu of using individual locomotive mounted horns) would eliminate all severe impacts. No additional noise mitigation measures (soundproofing or noise barriers) would be required.

As documented in Chapter 5, there are no historic properties where a quiet setting is a character-defining feature, and therefore no historic properties where changes in sound levels would result in an impact to historic features.

AAF-AR0074121

As documented in Section 5.2.2, *Noise and Vibration*, changes in noise from the operation of the Project would not result in a constructive use to Section 4(f) recreation resources within or adjacent to the Project Study Area, for the following reasons:

- The Section 4(f) recreation resources currently experience vehicular traffic noise disturbance (automobile and truck traffic within the SR 528 corridor) at higher levels than would be produced by passenger trains, and/or rail noise disturbance (freight traffic within the existing FECR Corridor).

- Noise disturbance from additional train traffic would be intermittent, and limited to only a few minutes per hour under the highest levels of rail traffic.

- Train noise from individual passenger trains along the N-S Corridor would likely be lower and occur for shorter periods of times, even though more frequently, than with current freight rail operations.

Section 5.2.2, *Noise and Vibration* discusses changes in noise associated with the Project. The Project would be compatible with the intended uses of Section 4(f) recreation resources, as parklands are compatible with these noise levels (FAA 2004). Minor increases in noise would not be a constructive use of any park or recreation area along the N-S Corridor.

As stated in Section 3.3.8 of the 2012 EA (Appendix 1.1-A1), one Section 4(f) resource appears to have a potential effect from noise along the WPB-M Corridor: the El Portal Tot Lot – Miami-Dade County. However, based on committed mitigation measures (for example, stationary grade crossing horns), all severe and moderate effects related to recreational land uses are eliminated, including noise impact to the El Portal Tot Lot. The FONSI made the determination that there would be no use of this property under Section 4(f).

## 6.5.2.2    Vibration

The analysis of vibration showed that although the frequency of event would increase, the overall vibration levels would not increase. Table 5.4.5-4 shows the vibration effects on historic properties and identifies the land use category associated with each property. As shown, and documented in Section 5.2.2 of the FEIS, vibration from operation of the passenger rail system would not result in vibration that exceeded damage thresholds (100 VdB at 70 feet), although some properties would experience vibration at "annoyance" levels (perceptible vibration). Therefore, FRA anticipates that there will be no indirect adverse effects due to changes in noise or vibration to either the integrity of setting or physical structure of any historic property. Because the proposed passenger trains will create vibration at lower levels and shorter durations than the existing freight trains that currently utilize the corridor and will continue to use the corridor in the future condition, adding passenger trains will not result in any increased operational vibration impacts on historic sites or subsurface archaeological sites. Construction vibration also was evaluated. The analysis showed that pile-driving at bridges could exceed this damage threshold at distances up to 135 feet, however there are no historic properties within 135 feet of these bridges.

The low level of vibration from the proposed passenger trains, which is less than that associated with freight trains that currently utilize the corridor, will not result in any additional impacts on recreational sites, parks or wildlife refuges. The predicted levels of vibration would not interfere with the intended use of Section 4(f) recreation resources within the Project Study Area. Any increase in vibration resulting from the Project would not create adverse effects, and would be scarcely noticeable to the surroundings.

AAF-AR0074122

As stated in the FTA Noise and Vibration Manual, "ground-borne vibration is almost never annoying to people who are outdoors...The rumble noise that usually accompanies the building vibration is perceptible only inside buildings." Vibration therefore has no effect on persons using outdoor recreational areas or parks. The Project would cross Long Bluff Road in the Tosohatchee WMA by means of an overpass. Vibration effects at this crossing would be less than those projected for the at-grade portions of the E-W Corridor, as the trains would be elevated and disconnected from the ground. Vibration associated with existing freight traffic along the N-S Corridor, including the crossing of Southeast Jonathan Dickinson Way in Jonathan Dickinson State Park, is greater than vibration associated with the proposed passenger train traffic. This finding is also true for the Walton Scrub Preserve, where an observation tower (to provide views of the Indian River Lagoon) was recently constructed in close proximity to the existing FECR right-of-way. Changes in vibration from the Project would not result in constructive use to Section 4(f) recreation resources within or adjacent to the Project Study Area, as the intended use of these resources is compatible with any increases in vibration. Section 5.2.2, *Noise and Vibration* discusses changes in vibration associated with the Project.

### 6.5.2.3    Aesthetic

Returning the FECR Corridor to its historic configuration and historic use as a passenger rail line will not change the visual setting of any historic property within the indirect effects APE. The Project will not introduce any new visual elements. Replacing and upgrading the existing crossing gates at at-grade crossings within historic districts or in proximity to a historic property will be designed and constructed in consultation with the SHPO, so as not to adversely change the visual characteristics of the streetscape. The analysis considered the potential that replacing existing grade crossing signals and equipment adjacent to historic districts could alter the visual setting. Three at-grade crossings are located adjacent to one NRHP-eligible historic district in Brevard County (Union Cypress Saw Mill Historic District [8BR2173]); four at-grade crossings are located within a National Register–eligible historic district in St. Lucie County (Edgar Town Historic District [8SL2801]); and two at-grade crossings are located within and adjacent to a National Register–eligible Kelsey City Layout (8PB13340) in Palm Beach County. As determined by FRA and confirmed by SHPO for Phase 1, the proposed Project will not have an indirect effect on these resources because grade crossing improvements will not change the setting of the district and, because there are already modern grade crossing equipment at these locations, will not introduce new modern elements.

The Project along the E-W Corridor would be constructed primarily within or adjacent to the SR 528 right-of-way. SR 528 dominates the existing viewshed along the majority of the E-W Corridor; modifications proposed for this corridor would not substantially change existing aesthetic conditions for the two Section 4(f) properties present along this segment. Within the section of the SR 528 Corridor adjacent to the Tosohatchee WMA, the AAF railroad would cross an existing unpaved road (Long Bluff Road) on a bridge immediately adjacent to the SR 528 bridge, and would not change existing aesthetic conditions. The Canaveral Marshes area is not within the viewshed of the proposed rail line. The N-S Corridor is within the existing FECR Corridor, and modifications proposed for this corridor would maintain the general aesthetics of this active rail line. Changes to aesthetics/viewshed associated with the Project would not result in constructive use to Section 4(f) recreation resources within or adjacent to the Project Study Area. Section 5.4.7, *Visual and Scenic Resources*, discusses changes to aesthetics associated with the Project.

AAF-AR0074123

#### 6.5.2.4    Access Alteration

None of the Section 4(f) recreation resources within the Project Study Area would require alteration to existing access. The Project crosses Long Bluff Road and Southeast Jonathan Dickinson Way in the Tosohatchee WMA and Jonathan Dickinson State Park, respectively. The Project would cross Long Bluff Road on an elevated track structure next to the existing SR 528 bridge, and would maintain existing accessibility. The N-S Corridor would be entirely within the existing FECR Corridor, which currently crosses Southeast Jonathan Dickinson Way, and would require that the existing at-grade crossing be reconstructed. AAF will maintain access on these roads throughout construction and would not affect the public's use of the properties.

All of the other Section 4(f) resources along the N-S Corridor have existing access from public roads. Increasing train traffic will not change public access points to these parks, nature preserves or recreation areas. Although park visitors may illegally cross the existing railroad, this trespassing is unsafe under current conditions and is not allowed by the FECR.

### 6.6    Alternatives Analysis

FRA NEPA Procedures requires that the Section 4(f) Determination include "A similarly detailed description of every reasonable alternative location, routing, or design to the one proposed, including the alternative of "no action." Each description should analyze, as appropriate, the technical feasibility, cost estimates (with figures showing percentage differences in-total project costs), the possibility of community or ecosystem disruption, and other significant environmental impacts of each alternative, so as to evidence that the financial, social, or ecological costs or adverse environmental impacts of each alternative other than that proposed would present unique problems or reach extraordinary magnitudes."

Chapter 3, *Alternatives*, of this FEIS provides a complete analysis of alternatives that were developed and evaluated for the entire project. In Level 1 of that analysis, AAF evaluated three alternatives that would avoid using the FECR corridor and would therefore avoid the demolition and resulting Section 4(f) use of the Eau Gallie River and St. Sebastian River bridges. The three route alternatives (the I-95 Route, the Florida's Turnpike Route, and the CXS Route) were dismissed as not feasible to construct or operate because they did not meet the purpose and need of the Project. Specifically, the alternatives resulted in excessive construction costs, long trip times (which would reduce ridership and financial feasibility), and higher impacts to the natural and built environment. FRA concurred with AAF's analysis and decided not to carry the alternatives forward for further review in the EIS.

This section provides the analysis of reasonable and prudent alternatives that avoid the use of the Eau Gallie River and St. Sebastian River bridges. These two individually eligible bridges (the Eau Gallie River and St. Sebastian River) must be replaced because they are currently single-track bridges and because AAF assessed the condition of each existing bridge and determined it was not feasible to rehabilitate the bridge superstructure due to its condition and the condition of the substructure. The proposed passenger trains will operate at 110 mph in this segment, and require a higher bridge loading factor than the existing freight trains, which operate at 28 mph. The existing substructure and superstructure, even if rehabilitated, would not meet the required loading rating. Without replacing these bridges, AAF could not

AAF-AR0074124

operate passenger trains over the bridges. For each of the bridges that would be demolished and replaced, FRA evaluated several alternatives which are discussed in detail for each bridge in the following sections.

This evaluation showed that it is necessary to demolish each of the bridges and replace it with a new 2-track structure. The SHPO and FRA have concurred that the proposed Project will have an adverse effect on these two bridges; therefore, a draft Memorandum of Agreement (MOA) between the FRA, the SHPO, and AAF has been developed that addresses construction of the Eau Gallie River and St. Sebastian River Bridges. As part of the draft MOA, FRA, AAF and the SHPO agree that the undertaking will be implemented in accordance with specific stipulations to minimize, and to the extent practical avoid effects to known historic properties listed or eligible for listing on the NRHP (see Appendix 5.4.5).

### 6.6.1    Eau Gallie Bridge

In order to implement the Project, the Eau Gallie Bridge, a structure located within the FECR right-of-way, would be demolished and a new bridge would be constructed in its place to accommodate the future passenger and freight rail traffic. Figure 6.2-1 shows the location and representative view of the Eau Gallie Bridge.

#### 6.6.1.1    Description of Bridge and Status of Historical Designation

The original railroad crossing of the Eau Gallie River in Melbourne, Brevard County, was constructed in 1925 as a fixed viaduct bridge with two tracks on an open deck. The bridge has 15 spans and is approximately 600 feet long. The substructure consists of steel bents on concrete piles, with cross-ties between bents. At some point during its operating history, the railroad was reduced to a single active track on the eastern side of the deck. The western tracks were not maintained and are in a state of dilapidation and disrepair.

FRA has determined that the existing bridge is eligible for listing in the National Register both as an individual resource and as a contributing resource to the FECR District (see Section 4.4.5 in Chapter 4 for additional information and determinations of eligibility for both the Eau Gallie Bridge and the FECR District).

#### 6.6.1.2    Proposed Use

The Project includes constructing new twin 575-foot independent ballast deck bridges east of the existing railroad bridge and demolishing the existing bridge. Demolishing and removing the existing bridge is necessary to safely implement the Project, allow for high-speed passenger operations, and protect navigation uses on the waterway, as determined by the U.S. Coast Guard (USCG). The USCG has determined bridges must be removed to allow for safe navigation of vessels.[5] Bridges that are not used for the convenience of land transportation are considered unreasonable obstructions to navigation. There is a condition in all USCG bridge permits for removal of bridges no longer used for transportation purposes.

The demolition of the bridge is an adverse effect under Section 106 (see Section 5.4.5 in Chapter 5 for the finding of adverse effect) and constitutes a use under Section 4(f).

---

[5]   Letter from Evelyn Smart, Environmental Protection Specialist with the United States Coast Guard to Lisa A. Standley, Chief Environmental Scientist with Vanasse, Hangen, Brustlin, Inc. April 4, 2014.

AAF-AR0074125



| Eau Gallie Bridge | | |
|---|---|---|
| All Aboard Florida Intercity Passenger Rail Project | | |



Data Sources: USGS Earthstar Geographics SIO 2015,
Microsoft Corporation 2015, Nokia

U.S. Department of Transportation
Federal Railroad Administration

6.2-1

Section 4(f) Determination                6-21

**6.6.1.3    Design Alternatives Considered**

FRA considered a comprehensive set of avoidance alternatives to avoid demolishing the bridge. The potential avoidance alternatives included the maintaining the existing bridge, , rehabilitating and reusing the existing bridge, adding a second single-track bridge alongside the existing bridge, constructing a new two track passenger rail bridge (retaining the existing) and constructing a new two track passenger rail bridge and abandoning the existing. These alternatives are described below.

**Maintain the Existing Bridge**

Under the Maintain the Existing Bridge Alternative, the bridge would be retained in its current condition, and no new bridge would be constructed. The Project would operate with a single track crossing at this location, on the existing bridge.

This alternative is not feasible and prudent. The proposed passenger trains will operate at 110 mph in this segment, and require a higher bridge loading factor than the existing freight trains, which operate at 28 mph. The existing substructure and superstructure, would not meet the required loading rating and therefore the current bridge cannot safely support 110-mph passenger train speeds.

The existing structure is an open-deck bridge, meaning the timber railroad ties are bolted to the tops of the steel plate girders, and the girder top flanges are otherwise open to the air above them. This structure is adequate for trains travelling at the current slower freight speeds. However, for the higher speeds of the AAF trains traveling at 110 mph along these stretches of the corridor, an open deck presents numerous operational and safety problems. First, the lack of ballast means there is no energy-absorbing buffer between the trains and the stiff steel structure beneath. This prevents the energy from the moving train from being dissipated and therefore leads to magnified vibrations, rocking and bouncing of the AAF trains, resulting in significant passenger discomfort. Further, the additional un-absorbed vibrations add wear-and-tear on the trains and will impact steel girders, cross-frames, and other miscellaneous components because the vibrations induced by high-speed trains. Lastly, higher speed trains generate a different dynamic frequency (harmonic wave energy and vibration) and an increase in fatigue cycling than slower trains. This may lead to premature failure of steel connection and other fatigue-sensitive steel components.

**Rehabilitate and Reuse the Existing Bridge**

This alternative would rehabilitate and reuse the existing bridge superstructure, and restore the second track on the west side of the deck. Based on AAF's assessment showing that because of the condition of the existing bridge, FRA concurred it was not feasible to rehabilitate the bridge superstructure due to its condition and the condition of the substructure. The proposed passenger trains will operate at 110 mph in this segment, and require a higher bridge loading factor than the existing freight trains, which operate at 28 mph. The existing substructure and superstructure, even if rehabilitated, would not meet the required loading rating.

The optimum design for safe and efficient passenger rail service is to use railroad ballast contained on a concrete deck that is cast onto the steel girders, known as a ballasted concrete deck. This design absorbs the majority of the energy in the ballast and allows the concrete to distribute the loads to a greater number of steel components, reducing the fatigue and vibration loading. However, retrofitting the existing bridges

AAF-AR0074127

with a 12-inch thick concrete deck and an 18-inch layer of ballast would add approximately 100 tons of dead load to each 50-ft long span of the existing bridge (33 percent more loading). That additional 100 tons of dead load could ordinarily be accommodated in the superstructure (girders, deck, etc.) by replacing some or all of the structural steel in the bridge. However, it was determined during design that the additional 100 tons cannot be supported by the existing foundations of the bridge. The existing foundations consist of small-diameter timber piles, driven below the mudline and capped with a large, unreinforced concrete seal. These piles only have a design capacity of 20 tons.

The existing foundations could be strengthened by driving new pilings adjacent to the existing foundations and tie the new piles into the existing footings to add more load capacity. Pile driving operations could damage the old timber piles and further reduce the bridge's capacity. Furthermore, the required number of additional piling and the complicated connection of new reinforced concrete into the unreinforced concrete, all below the mudline, would be cost-prohibitive and difficult to ensure that the existing footings are not overloaded by transferring the increased loads into the new piles. Therefore, the recommendation of the professional engineers that analyzed the operation and structural integrity of the bridge is to fully replace it.

For the above stated reasons, this alternative would not meet the project purpose and is neither feasible nor prudent.

### Add a Second Single-track Bridge Beside the Existing Bridge

This alternative would build a new single-track bridge adjacent to the existing structure for passenger rail service and still maintain freight rail traffic on the existing bridge.

Because the Eau Gallie River and St. Sebastian River Bridges are only 7 miles apart, this alternative would require an approximately 10-mile single-track segment for passenger rail connecting both bridges, as it would not be feasible to construct turnouts and a second track within this short segment that would support the proposed operating speed. Passenger trains would be unable to pass on this segment. Modeled train performance based on this infrastructure change demonstrates that on-time performance of passenger trains would be reduced from 95 percent to 69 percent as a result of the single-track section. This does not meet the minimum requirements for viable passenger train service, and would therefore not meet the Project's purpose and need.

### Construct 2-Track New Passenger Rail Bridge and Retain Existing Bridge

This alternative would construct a new two track bridge east of the existing bridge, for passenger rail service. The existing bridge would be retained for freight use only. This alternative would have three active tracks at the Eau Gallie and St. Sebastian River Bridges, and would likely require either a three-track infrastructure for the entire 10-mile segment (and adding a third track to the bridges over Crane Creek and Turkey Creek, both navigable waterways), or new switches and crossovers north and south of each bridge. Because of the track curvature and switches, passenger trains would have to reduce speed, which would increase trip times and reduce on-time performance to the point where it would not meet the project purpose. In addition, installing a third track is not feasible because there is not sufficient right-of-way and numerous property acquisitions would likely be required. As demonstrated in Chapter 3, Alternatives, property acquisition has a significant effect on the financial feasibility of the Project. This

AAF-AR0074128

alternative is not prudent because it would present unique operational problems affecting the Project's ability to meet the purpose and need and would also likely result in additional environmental and socioeconomic impacts including additional property acquisition and increased impacts to navigable waters.

**Construct 2-Track New Bridge and Retain (Abandon) Existing Bridge**

This alternative would construct a new two track bridge east of the existing bridge. The existing bridge would be retained but abandoned. This alternative is not prudent, as the USCG has determined the bridge must be removed to allow for safe navigation of vessels on the Eau Gallie River at this location if new bridges are constructed (USCG 2014). Bridges that are not used for the convenience of land transportation are considered unreasonable obstructions to navigation. There is a condition in all USCG bridge permits for removal of bridges no longer used for transportation purposes.

## 6.6.2    St. Sebastian River Bridge

In order to implement the Project, the St. Sebastian River Bridge, a structure located within the FECR right-of-way, would be demolished and a new bridge would be constructed in its place to accommodate the future passenger and freight traffic. For analysis of alternatives, see information provided above on the Eau Gallie River Bridge. Figure 6.2-2 shows the location and representative view of the St. Sebastian River Bridge.

### 6.6.2.1    Description of Bridge and Status of Historical Designation

The original railroad crossing of the St. Sebastian River in Brevard and Indian River counties was constructed in 1926 as two, deck plate girder bridges supported by a common substructure. Each bridge superstructure has an open deck and single track. The substructures consist of steel towers on concrete foundations with steel ties. The bridges span an approximately 1,635-foot crossing. At some point during its operating history, the railroad was reduced to a single active track on the easternmost bridge. The westernmost bridge has not been maintained. The rails were removed and the deck and substructure have fallen into disrepair.

The existing bridges are eligible for listing in the National Register both as individual resources and as contributing resources to the FECR Corridor linear historic district (see Section 4.4.5 in Chapter 4 for additional information and determinations of eligibility for both the St. Sebastian Bridge and the FECR Corridor linear historic district).

### 6.6.2.2    Proposed Use

The Project includes the construction of a new twin independent ballast deck structure with concrete piers, to the east of the existing railroad bridges and the demolition and removal of both of the existing bridges. Demolishing and removing the bridges is necessary to protect navigation uses on the waterway, as determined by the USCG. The demolition of the bridge is an adverse effect under Section 106 (see Section 5.4.5 in Chapter 5 for the finding of adverse effect) and constitutes a use under Section 4(f). The bridge is within the FECR right-of-way and no property acquisition is required.

AAF-AR0074129



| St. Sebastian River Bridge | | |
| :--- | :--- | :--- |
| **All Aboard Florida Intercity Passenger Rail Project** | | |

Data Sources: USGS Earthstar Geographics SIO 2015,
Microsoft Corporation 2015, Nokia

U.S. Department of Transportation
**Federal Railroad Administration**

6.2-2

Section 4(f) Determination                    6-25

AAF-AR0074130

### 6.6.2.3     Design Alternatives Considered

A comprehensive set of avoidance alternatives was considered to avoid demolishing the bridge, including maintaining the existing bridge, rehabilitating and reusing the existing bridge, constructing a new passenger rail bridge and retaining the existing freight bridge, constructing a new two track passenger rail bridge and retaining the existing ng bridge, and constructing a new two track passenger rail bridge and abandoning the existing bridge. Because the St. Sebastian River Bridge has a single substructure that supports two single-track superstructures, the alternatives evaluated are slightly different than for the Eau Gallie River Bridge, which has two entirely separate substructures and superstructures. These alternatives are described below.

### Maintaining the Existing Bridge

Under the No-Action Alternative, the bridge would be retained in its current dilapidated and unused condition, and no new bridge would be constructed. The Project would operate with a single crossing at this location, on the existing single track bridge superstructure.

As described for the Eau Gallie River Bridge, this alternative is not prudent because 110-mph passenger trains cannot safely operate over the existing bridge.

### Rehabilitate and Reuse the Existing Bridge

This alternative would rehabilitate and reuse the existing bridge, and restore it to use as two-track bridge capable of supporting 110-mph passenger rail service. AAF assessed the condition of the existing bridge and determined it was not feasible to rehabilitate the bridge due to its condition. In addition, the proposed passenger trains will operate at 110 mph in this segment, and require a higher bridge loading factor than the existing freight trains, which operate at 28 mph. The existing substructure and superstructure, even if rehabilitated, would not meet the required loading rating. For the same reasons described above for the Eau Gallie River Bridge, this alternative would not meet the project purpose and is neither feasible nor prudent.

### Construct a New Passenger Rail Bridge and Retain Existing Freight Bridge

This alternative would construct a new two track bridge east of the existing bridge, for passenger rail service. The existing bridge would be retained for freight use only. Because the Eau Gallie River and St. Sebastian River Bridges are only 7 miles apart, this would require an approximately 10-mile single-track segment for passenger rail that connected both bridges. Passenger trains would be unable to pass on this segment. AAF has modeled train performance based on this infrastructure change and determine that on-time performance of passenger trains would be reduced from 95 percent to 69 percent as a result of the single-track section. For the same reasons described above for the Eau Gallie River Bridge, this alternative would not meet the project purpose.

### Add a Second Single-track Bridge beside the Existing Bridge

This alternative would build a new single-track bridge adjacent to the existing structure for passenger rail service and still maintain freight rail traffic on the existing bridge. The discussion of this alternative presented for the Eau Gallie River Bridge is applicable. As for the Eau Gallie River Bridge, this alternative

AAF-AR0074131

is not prudent because it would not meet the project purpose, and would result in greater environmental impacts.

**Construct New Bridge and Retain (Abandon) Existing Bridge**

This alternative would construct a new two track bridge to the east of the existing bridge. The existing bridge would be retained in its current state. This alternative is not prudent, as the USCG has determined the bridge must be removed to allow for safe navigation of vessels on the St. Sebastian River at this location (USCG 2014). Bridges that are not used for the convenience of land transportation are considered unreasonable obstructions to navigation. There is a condition in all USCG Bridge Permits for removal of bridges no longer used for transportation purposes.

## 6.7    Planning Undertaken to Minimize Harm

As part of the Section 106 process, FRA has consulted with SHPO and other appropriate parties to resolve the adverse effects to the Eau Gallie and St. Sebastian River bridges. The resolution of these effects has been memorialized in a draft Memorandum of Agreement (MOA, Appendix 5.4.5). The draft MOA requires FRA and AAF to document the existing Eau Gallie and St. Sebastian River bridges in accordance with Historic American Engineering Record (HAER) standards, and to consult with SHPO regarding the replacement bridge design. FRA has determined that the measures to resolve the adverse effects developed through the Section 106 consultation process are appropriate measures to minimize harm under Section 4(f).

## 6.8    Consultation

FRA NEPA Procedures require that FRA consult with the Department of the Interior (DOI) concerning Section 4(f) compliance and, where applicable, with public officials having jurisdiction over the Section 4(f) properties regarding the proposed action and the planning to minimize its harm.

The DOI reviewed the DEIS and provided comments on the Section 4(f) evaluation (letter provided in Appendix 8.1-D1). DOI recommended that the FRA continue working with SHPO to develop a MOA to document the measures to avoid, minimize and mitigation impacts to Section 4(f) resources.

While the Eau Gallie Bridge or St. Sebastian River Bridge are within the FECR right-of-way and owned by the FECR, because they are individually eligible for the National Register, and therefore protected by Section 106, SHPO is the applicable official with jurisdiction. FRA has worked extensively with SHPO throughout the NEPA and Section 106 process, as detailed in Chapters 4 and 5 of the FEIS, in Sections 4.4.5.1 and 5.4.5.2. As described in the DEIS, the officials with jurisdiction over the Tosohatchee WMA and the Jonathan Dickinson State Park were consulted because of potential impacts to those resources that have since been avoided. However, outside of the NEPA process, no additional 4(f)-specific consultation occurred because the remaining resources would not be used by the Project.

AAF-AR0074132

## 6.9      Findings

As described in the analysis above, FRA has determined that there is no feasible and prudent alternative to the demolition of the Eau Gallie River and St. Sebastian River bridges and the project includes all possible planning to minimize harm. New bridges are required at these locations to upgrade these crossings to double track crossings, and retaining the bridges presents an unacceptable safety risk to navigation of vessels on the waterways below. To mitigate the loss of these historic resources, consistent with the Section 106 process to resolve adverse effects to these resources, AAF will document the existing Eau Gallie and St. Sebastian River bridges in accordance with Historic American Engineering Record (HAER) standards, and consult with SHPO regarding the replacement bridge design. These mitigation measures are documented in the draft MOA appended to the FEIS (Appendix 5.4.5).

AAF-AR0074133